IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAFAEL LOPEZ,

     Plaintiff,                    No. CIV S-09-3089 MCE CKD P

    vs.

DAVE DAVEY, et al.,

     Defendant.               FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. This case proceeds on the complaint filed November 6, 2009. Plaintiff claims that defendants Davey, Gamberg, and Robertson subjected him to inhumane conditions of confinement in violation of the Eighth Amendment. Pending before the court is defendants' August 26, 2011 motion for summary judgment. Plaintiff has filed a brief entitled "motion for summary judgment" which, for reasons discussed below, the court construes as an opposition to defendants' motion. Defendants have filed a reply. For the following reasons, the undersigned recommends that defendants' motion be granted.

////

////

II. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

\\\\\

1  On July 28, 2010, the court advised plaintiff of the requirements for opposing a
2  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
3  F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.
4  Eikenberry, 849 F.2d 409 (9th Cir. 1988).
5  III. Discussion
6  A.  Legal Standard
7  Plaintiff alleges that defendants subjected him to inhumane conditions of
8  confinement in violation of the Eighth Amendment.
9  To constitute cruel and unusual punishment in violation of the Eighth
10  Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain...."
11  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive
12  and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical
13  care, and personal safety.  Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986);
14  Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982).  Where a prisoner alleges injuries
15  stemming from unsafe conditions of confinement, prison officials may be held liable only if they
16  acted with "deliberate indifference to a substantial risk of serious harm."  Frost v. Agnos, 152
17  F.3d 1124, 1128 (9th Cir.1998).
18  The deliberate indifference standard involves an objective and a subjective prong.
19  First, the alleged deprivation must be, in objective terms, "sufficiently serious[.]"  Farmer v.
20  Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second,
21  the prison official must "know [ ] of and disregard[ ] an excessive risk to inmate health or
22  safety[.]"  Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth
23  Amendment for denying humane conditions of confinement only if he knows that inmates face a
24  substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.
25  Id. at 837-45.  Prison officials may avoid liability by presenting evidence that they lacked
26  knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to

1  the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to
2  establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152
3  F.3d at 1128.
4        "What is necessary to show sufficient harm for purposes of the Cruel and Unusual
5  Punishment Clause depends upon the claim at issue[.]" Hudson v. McMillian, 503 U.S. 1, 8
6  (1992). "The objective component of an Eighth Amendment claim is ... contextual and
7  responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted).
8  "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment]
9  conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim,
10 "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses
11 against society, only those deprivations denying the minimal civilized measure of life's
12 necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id.
13 (quotations and citations omitted).
14       B.  Factual and Procedural  Background
15       Plaintiff is an inmate at High Desert State Prison (HDSP). At the time of the
16 events at issue, defendants were employed by CDCR and working at HDSP: Davey as a Captain
17 on Facility B; Gamberg as a Lieutenant on Facility B; and Robertson as a Sergeant on Facility B.
18       Plaintiff alleges that on December 1, 2008, he wrote a safety concern request and
19 was escorted to the program office at Facility B. While he was being interviewed by two non-
20 defendant correctional officers about the request, defendant Davey came in. When plaintiff
21 explained his safety concern to Davey, Davey responded that he didn't care. That afternoon,
22 plaintiff wrote another safety concern request and gave it to a non-defendant correctional officer,
23 who escorted him to the program office and put him in a holding cage. Defendant Robertson
24 ordered plaintiff to be put in mechanical restraints and handcuffed in the cage. Plaintiff remained
25 in the holding cage, handcuffed, from 9:30 p.m. until 3:45 p.m. the next day, and was not
26 allowed a restroom break or provided food or water during that time. A holding cell log attached

the complaint indicates that defendant Gamberg gave approval for plaintiff to be held in the cage beyond a four-hour time limit.  (Dkt. No. 1 ("Cmplt.") at 3-4, 29; see also Dkt. No. 39 ("Opp.") at 1.)

In a sworn declaration in support of summary judgment, defendant Davey states that, while he was present on December 1, 2008 while non-defendant officers interviewed plaintiff about safety concerns, he was not involved in the decision to place plaintiff in a holding cell and did not know about plaintiff's placement in the holding cell until after plaintiff had been released from the holding cell. (Dkt. No. 36-3 at ¶¶ 2, 4.)

As to defendant Gamberg, defendants present the undisputed facts as follows:

> At 9:05 p.m. on the night of December 1, 2008, [non-defendant] Officers Lush and Maydole were picking up mail in Lopez'[s] housing unit.  When they arrived at Lopez'[s] cell, Lopez showed them a weapon he had manufactured.  The weapon was a razor blade tied to a toothbrush.  Maydole asked Lopez what he was going to do with it and Lopez stated "what ever it takes to go to Ad Seg."  Lopez was then removed from his cell and placed into the shower while a search of Lopez'[s] cell was performed.
>
> During the search, Officer Lush found three notes signed by Lopez. Two stated that Lopez was suicidal and one stated that he feared for his life.
>
> At approximately 9:15, Gamberg was in the Facility B program office when Officers Lush and Maydole brought in Lopez. Gamberg instructed them to return Lopez to his housing unit for the institutional count and then to return him to the program office if necessary after the count.
>
> Once the count had been completed, the officers again escorted Lopez to the program office.  The officers informed Gamberg that Lopez had indicated he was suicidal.  He therefore instructed the officers to place Lopez into a holding cell in the program office until he could be escorted to the prison's correctional treatment center (CTC) to be interviewed by a psychologist.  He did not order that Lopez be kept in mechanical restraints while in the holding cell.  Gamberg's normal working hours at this time were the third watch, from 2:00 p.m. to 10:00 p.m.  Accordingly, he then departed the prison at 10:00 p.m. when his shift ended.
>
> . . .
>
> [Gamberg] had no further involvement with Lopez until he

6

|   |   |
|---|---|
| 1 | returned to work the next day at 2:00 p.m. and subsequently learned that Lopez was in a holding cell awaiting transfer to administrative segregation. He then promptly completed the paperwork necessary to transfer Lopez to administrative segregation at 3:30 p.m. |
| 2 |   |
| 3 |   |

(Dkt. No. 36 ("Mtn.") at 2-4 (record citations omitted).) In support of these statements, defendants cite Gamberg's sworn declaration, a Rules Violation Report by Lush, a Rules Violation Report by Maydole, both concerning events on the night of December 1, 2008; and the holding cell log from December 2, 2008. (Id.; see Dkt. Nos. 36-4 (Gamberg Decl.), 36-6 (Hanlon Decl.), Exs. A, B, C).)

As to defendant Robertson, defendants present the undisputed facts as follows:

> Robertson was on duty in Facility B when Lopez was returned to the facility at approximately 5:00 a.m. [after a suicide risk assessment at 3:15 a.m. on December 2, 2008]. Lopez was in mechanical restraints and being escorted by Officer Maydole. Due to the safety concerns involving Lopez, the plaintiff was placed into a holding cell by Robertson and other members of the custody staff. Officer Maydole then removed Lopez'[s] mechanical restraints.
>
> When an inmate is placed into a holding cell, it is the standard practice that a member of the custody staff check on his status at fifteen minute intervals. Once Lopez was secured into the holding cell, Robertson checked on his status at 5:15 a.m., 5:30 a.m., 5:45 a.m., and again at 6:00 a.m. At this time, Robertson's normal working hours were the first watch (10:00 p.m. to 6:00 a.m.). Accordingly, after checking on Lopez at 6:00 a.m., Robertson's shift ended and he left the prison for the day. He had no further involvement with Lopez on December 2, 2008. Because he left the prison at 6:00 a.m. on December 2, 2008, Robertson was unaware of the duration of Lopez'[s] stay in the holding cell.

(Mtn. at 4 (record citations omitted).) In support of these statements, defendants cite Robertson's sworn declaration and the holding cell log signed by Robertson on December 2, 2008. (Id.; see Dkt. Nos. 36-5 (Robertson Decl.), 36-6 (Hanlon Decl., Ex. C).)

For the following reasons, the court construes plaintiff's "motion for summary judgment," a seven-page document filed on November 2, 2011, as an opposition to defendants' motion. This motion was filed more than two months after the August 26, 2011 dispositive

7

motion deadline.  (Dkt. No. 23.)  Thus, insofar as plaintiff is attempting to move for summary judgment, the motion is untimely.

However, on October 13, 2011, the court ordered plaintiff to file an opposition or statement of non-opposition to defendants' motion for summary judgment within 30 days.  A few weeks later, plaintiff filed his "motion for summary judgment," but never filed an opposition.  Reasoning that plaintiff's filing was "likely intended as an opposition," defendants have construed it as such, and the court does likewise.

In his opposition, plaintiff repeats his claims that he was kept in a holding cell for approximately 18 hours on December 1 and 2, 2008, in mechanical restraints and handcuffs, and without a restroom break or water.  He also appears to claim that all three defendants wrote a suicide note and "made a weapon" and attributed these to plaintiff.  However, plaintiff submits no new evidence in support of his summary judgment briefing.

C.  Analysis

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where ... causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v.

1  Duffy, 588 F.2d 740, 743 (9th Cir.1978).

2  Moreover, supervisory personnel are generally not liable under § 1983 for the
3  actions of their employees under a theory of respondeat superior and, therefore, when a named
4  defendant holds a supervisorial position, the causal link between him and the claimed
5  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862
6  (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v.
7  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) (no liability where
8  there is no evidence of personal participation). Vague and conclusory allegations concerning the
9  involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board
10 of Regents, 673 F.2d 266, 268 (9th Cir.1982) (complaint devoid of specific factual allegations of
11 personal participation is insufficient).

12  Here, plaintiff has not raised a genuine issue of material fact as to whether Davey
13 violated his Eighth Amendment rights.  The crux of plaintiff's claim concerns his alleged
14 placement in a holding cell under inhumane conditions for approximately 18 hours on December
15 1 and 2, 2008.  Based on the record before the court, Davey was not involved in the initial
16 decision to confine plaintiff to the holding cell, nor in any decisions concerning plaintiff's
17 conditions in that cell.  In fact, it is undisputed that Davey did not know plaintiff had been placed
18 in a holding cell until after plaintiff was released from that cell.

19  Nor has plaintiff raised a genuine issue of material fact as to whether Gamberg
20 violated his Eighth Amendment rights.  According to the record before the court, Gamberg was
21 only involved with plaintiff for approximately 45 minutes on the night of December 1, 2008
22 before his shift ended.  During that time, in light of reports that plaintiff was suicidal and
23 possessed an inmate-manufactured weapon, Gamberg ordered plaintiff confined to the holding
24 cell until plaintiff could be seen by a psychologist.  It is disputed whether Gamberg ordered
25 plaintiff to be placed in handcuffs or mechanical restraints, but even if he did so, there is no
26 evidence that Gamberg "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety"

under the Eighth Amendment.  Similarly, even if Gamberg did not provide plaintiff food, water, or a restroom break during the 45 minutes of his shift that plaintiff was in the holding cell, such deprivations over such a short time do not amount to deliberate indifference to plaintiff's serious risk of harm.  Plaintiff also raises no genuine factual dispute as to whether Gamberg was deliberately indifferent on the afternoon of December 2, 2008, when he returned to work and completed the paperwork to transfer plaintiff from the holding cell to administrative segregation.

Defendant Robertson's work shift was between 10:00 p.m. on December 1, 2008 and 6:00 a.m. on December 2, 2008, during which time plaintiff claims he was continuously confined to the holding cell.  However, medical records from that night indicate that plaintiff was taken to a triage and treatment area at 11:35 p.m and also taken to an "out of cell" psychiatric assessment for suicide risk at 3:15 a.m. (Dkt. No. 36-7 (Christie Decl.), Ex. A.)  When plaintiff was returned to Facility B after the suicide assessment at 5:00 a.m. on December 2, 2008[1], Robertson placed him back in the holding cell "due to safety concerns," and another officer removed his mechanical restraints. (Dkt. No. 36-5 (Robertson Decl.).)  The holding log for that morning supports Robertson's claim that he checked on plaintiff every 15 minutes until his shift ended at 6:00 a.m. (Id.; Dkt. 36-6, Ex. C.)  Plaintiff's behavior was recorded as "standing" and "quiet." (Dkt. No. 36-6 at C.)  Here again, it is disputed whether plaintiff was in mechanical restraints between 5:00 and 6:00 a.m. on December 2, 2008, but, even if so, this does not rise to an Eighth Amendment claim of deliberate indifference.  As to plaintiff's claims that he was denied food, water, or a bathroom break while in the holding cell, plaintiff does not allege that he ever discussed these issues with Robertson, or that Robertson denied him any of these requests.  And even if Robertson failed to provide food, water, or a bathroom break during the hour he was responsible for plaintiff on the morning on December 2, 2008, such time-limited deprivations would not constitute deliberate indifference to a serious risk of harm.

---

[1] It is undisputed that Robertson's only contact with plaintiff on the night in question was between 5:00 a.m. and 6:00 a.m. (Dkt. 36-5 (Robertson Decl.).)

In sum, the record before the court indicates that all three defendants had very limited involvement in plaintiff's confinement to a holding cell during the 18-hour period at issue in December 2008, and none of their conduct rose to the level of deliberate indifference to plaintiff's serious risk of harm.  Thus plaintiff's Eighth Amendment claims against all three defendants should be dismissed at the summary judgment stage.

Accordingly, IT IS HEREBY RECOMMENDED THAT:

1. Defendants' August 26, 2001 motion for summary judgment (Dkt. No. 36) be granted;

2. Plaintiff's November 2, 2011 motion for summary judgment (Dkt. No. 39) be denied; and

3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 16, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
lope3089.msj